UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

DONALD LEE, ET AL,

    Defendants.

No. 19 C 641

Judge Thomas M. Durkin

### MEMORANDUM OPINION AND ORDER

Defendant Donald Lee is charged with conspiring to engage in a variety of racketeering acts through an enterprise known as the Wicked Town Faction of the Traveling Vice Lords street gang, in violation of 18 U.S.C. § 1962(d). Lee moved to suppress evidence obtained during a stop and subsequent search of a vehicle on March 6, 2018 on the grounds that it violated the Fourth Amendment. R. 520; 531.[1] An evidentiary hearing was held on August 15, 2022. For the reasons that follow, the motion is denied.

### Background[2]

On March 6, 2018, Officer Julio Rodriguez and his partner were driving eastbound on the 4800 block of West Concord. Rodriguez believed he smelled an odor

---

[1] Lee made his motion to suppress, R. 531, in part by adopting the arguments made by co-defendant Darius Murphy. R. 520. For convenience, the Court refers to Murphy's arguments as Lee's.
[2] The facts in this Order are based upon the evidence presented at the hearing on August 15, 2022, including the testimony of Officer Julio Rodriguez and the body-worn and dashboard camera footage.

of burnt cannabis and turned around at the end of the street (which was a cul-de-sac) to drive westbound on Concord with the intent of determining where the odor was coming from. Rodriguez, whose window was partially rolled down, determined the smell was coming from a white Ford which was parked on Concord.

The officers pulled their vehicle alongside the Ford, which had four passengers inside. There was at least one car length of open space in front of the Ford. Rodriguez got out of his car and, as he approached the Ford, saw tobacco smeared on the outside of the rear driver's side door, near the bottom of the window. This was plainly visible on the body-worn camera ("BWC") footage. Rodriguez tapped on the driver's window. The driver rolled down his window, and Rodriguez asked if the occupants "[had] anything on [them]." R. 577 at 3. The driver responded, "no sir, we only smoked one blunt [a cigar in which tobacco is removed and replaced with marijuana] bro, that's all." *Id*. A passenger, now known to be Lee, also stated "we just smoked one blunt, that's all man." *Id*. Soon after, the officers asked for the occupants' identification, realized that Darius Murphy, who was a backseat passenger, was suspected of being involved in a recent shooting, and had the four men exit the Ford. A search of the vehicle revealed a firearm and crack cocaine (neither of which were on Lee's person).

## Analysis

The Fourth Amendment protects individuals from unreasonable searches and seizures. Lee contends the officers violated his Fourth Amendment rights when they unreasonably seized him by approaching the Ford without reasonable suspicion to do so. The parties agreed during the evidentiary hearing that if the Court finds the

2

officers had reasonable suspicion to conduct an investigatory stop, Lee lacks standing to challenge the subsequent search of the vehicle, because he was a passenger and did not own the vehicle. The primary question before the Court then is whether reasonable suspicion existed to approach the car. The government bears the burden of proving by a preponderance of the evidence that reasonable suspicion supported the traffic stop. *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020).

## I. Seizure

The government first argues because the vehicle was already stopped and parked, a seizure did not occur. Rather, the government contends, the passengers of the car were simply engaged in a consensual conversation with police. "A consensual encounter between an officer and a private citizen does not trigger the Fourth Amendment … A consensual encounter becomes a seizure when a reasonable person in those circumstances would not feel free to leave." *United States v. Clements*, 522 F.3d 790, 794 (7th Cir. 2008) (internal citations omitted).

The facts support a finding that a seizure occurred here. While the government is correct that the Ford was already parked, that fact is not dispositive. A reasonable person would not feel as though they could drive away once the officer tapped on their window to indicate they should roll it down, shined his flashlight in the car, and began asking questions. The government argues that, because the officers pulled up alongside the Ford, and there was at least one car's length of empty space in front of the Ford, the Ford could have driven away. But the caselaw makes clear that officers need not totally restrict a citizen's freedom of movement in order to convey the

3

message that leaving is not an option. *United States v. Smith*, 794 F.3d 681, 686 (7th Cir. 2015). Although it was physically possible for the Ford to drive away and leave the scene, a reasonable person would not feel free to do so. Because a seizure occurred, the inquiry is whether the officers had reasonable suspicion for the stop.

## II.     Reasonable Suspicion

A seizure does not always violate the Fourth Amendment. Officers may stop and briefly detain a person for investigative purposes if they have reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968). Reasonable suspicion is a lower threshold than probable cause and depends on the totality of the circumstances known to the officer at the time of the stop. *United States v. Rickmon*, 952 F.3d 876, 881 (7th Cir. 2020).

The events here meet the standard to justify a *Terry* stop. Officer Rodriguez testified that he smelled burnt cannabis on his initial drive eastbound on Concord, and that he drove the other direction on the street to determine where the smell was coming from. He concluded it was coming from the Ford, in part because there were no other people on the street or occupied cars where the smell could have been coming from. He got out of his car, and upon doing so, he saw tobacco smeared on the side of the Ford, which indicated to him that someone had emptied tobacco from a cigar in order to smoke a blunt. The BWC footage played during the evidentiary hearing showed the tobacco on the side of the Ford was obvious and easy to see as soon as Rodriguez exited his car. Moreover, the BWC footage shows (although it is not visible until later in the stop) that the windows of the police vehicle were rolled down. The

driver of the Ford admitted, and Lee admitted a few minutes later, that they had smoked marijuana in the car. The officers thus had reasonable suspicion that the Ford passengers had freshly burnt marijuana in the vehicle. *See United States v. Guidry*, 817 F.3d 997, 1005 (7th Cir. 2016) (reasonable suspicion existed where officer "smelled a faint odor of marijuana"); *see also United States v. Williams*, 285 Fed. App'x 284, 286 (7th Cir. 2008) (smell of marijuana, along with other factors, sufficient to support Terry stop); *United States v. Shaffers*, 2018 WL 3141825 (N.D. Ill. June 26, 2018).

Lee contends the officers did not smell marijuana, in part because it was a cold, rainy evening and the windows of the Ford were rolled up. R. 520 at 3-4. The BWC footage, however, shows the officers' windows were not rolled all the way up, and Officer Rodriguez testified that he drove westbound on the street after turning around to ensure he smelled cannabis before conducting the stop. Further, as discussed, almost as soon as he began talking to the passengers of the Ford, they stated they were smoking cannabis. The Court finds Rodriguez's testimony that he smelled marijuana is credible, and the odor provided him with reasonable suspicion to conduct an investigatory stop of the Ford.[3]

Because the stop was valid, and Lee was a mere passenger in the vehicle, he lacks standing to challenge the subsequent search of the Ford. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). Lee agrees with this proposition.

---

[3] Marijuana possession in Illinois was illegal in 2018, so its more recent decriminalization is not implicated in this motion.

## Conclusion

For the foregoing reasons, the motion to suppress the March 6, 2018 stop (R. 520; R. 531) is denied.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: August 24, 2022